**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CYNTHIA VAN BUREN, | No. CV 15-8377-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 28, 2015, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties both filed Consents to proceed before the undersigned Magistrate Judge on November 19, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 4, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on February 10, 1972. [Administrative Record ("AR") at 177, 180.] She has past relevant work experience as a sales attendant and a small parts assembler. [AR at 30, 56.]

On November 14, 2011, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that she has been unable to work since October 1, 2010. [AR at 22, 177-79, 180-87.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 22, 144-45.] A hearing was held on May 22, 2014, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 37-61.] A Board-certified medical expert ("ME") in psychiatry, Dr. Herbert Tanenhaus, and a vocational expert ("VE"), also testified. [AR at 49-53, 53-59.] On July 22, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from October 1, 2010, the alleged onset date, through July 22, 2014, the date of the decision. [AR at 22-31.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 18.] When the Appeals Council denied plaintiff's request for review on September 28, 2015 [AR at 1-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation

2

and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the

claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 1, 2010, the alleged onset date.[1] [AR at 24.] At step two, the ALJ concluded that plaintiff has the severe impairments of migraine headaches, depression, and anxiety. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 25.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a full range of work

---

[1]     The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. [AR at 24.]

[2]     RFC is what a claimant can still do despite existing exertional and nonexertional
(continued...)

4

1  at all exertional levels, but with the following nonexertional limitations:

2  [Plaintiff should] avoid even moderate exposure to extreme cold, extreme heat, bright lights, noise or vibrations; avoid even moderate exposure to fumes, odors, gases, poor ventilation, hazardous machinery or unprotected heights; permit only occasional changes in the work setting; no production rate pace work or assembly line work; and limit to frequent interaction with the public and co-workers.

[AR at 26.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a sales attendant. Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 1, 2010, through July 22, 2014, the date of the decision. [AR at 30.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) rejected the lay witness testimony of her former supervisor; (2) failed to support his rejection of plaintiff's subjective symptom testimony, and relied instead on non-examining consultants, including the psychiatric ME, one-time examining consultants, and his own lay opinion, rather than on the extensive medical record documenting plaintiff's symptoms; and (3) failed to account for the impact of plaintiff's reasonably supported physical and mental impairments on her ability to work, rendering the VE's testimony invalid. [Joint Stipulation ("JS") at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.   LAY WITNESS TESTIMONY**

On May 13, 2014, Tammi Livermont, plaintiff's former supervisor at St. Jude Medical from 2006 to 2010, submitted a letter in which she stated the following:

It is my recollection that [plaintiff] had numerous battles with migraines. I would

---

² (...continued)
limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

5

> approximate that she missed work, because of these migraines about four to six times a month. Also I recall that she was placed on St. Jude's [sic] Medical "Intermittent Medical Leave."

[AR at 261.] Plaintiff contends that the ALJ only noted Ms. Livermont's testimony "in the context of [plaintiff's] credibility about the severity of her headaches [and] failed to discuss this evidence favorable to her in the context of her claim of absences impacting her ability to work." [JS at 6.]

After summarizing the lay witness testimony of Ms. Livermont, as well as the testimony of plaintiff's daughter, and of the property manager at plaintiff's apartment complex, the ALJ generally stated the following:

> The undersigned has reviewed and given full consideration to these reports by friends and/or family members. The undersigned finds the lay opinions therein are not consistent with the Record. The claimant's daughter's statements are not supported by the clinical or diagnostic medical evidence that is discussed more thoroughly below. In addition, while the undersigned finds the records indicated the claimant suffered from migraine headaches, this impairment is well accommodated in the [RFC] adopted in this case.

[AR at 27 (citation omitted).]

In determining the severity of a claimant's impairments and how the impairments affect her ability to work, lay witness testimony[3] by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); accord Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. § 416.913(d)(4), (e). Such testimony "is of particular value" because those who see a claimant every day can often tell whether she is suffering or merely malingering. Smolen, 80 F.3d at 1289 (citation omitted). While an ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis," Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012), he may discount the testimony of lay witnesses only for "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

---

[3] Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. § 416.913(d)(4).

1    Here, the ALJ generally stated that the "lay opinions . . . are not consistent with the
2 Record." [AR at 27.] To the extent the ALJ intended this reason to apply to Ms. Livermont's
3 testimony, however, a number of records reflect that plaintiff *was* diagnosed with migraine
4 headaches, and indeed, the ALJ noted records reflecting the migraines. [AR at 29 (citing AR
5 exhibits 3F, 4F, 8F, 12F, 15F, 20F, 21F).] Ms. Livermont stated her recollection is that between
6 2006 and 2010 plaintiff had numerous such headaches. [AR at 261.] Thus, Ms. Livermont's
7 observation that plaintiff had "numerous battles with migraines," is amply supported by the medical
8 evidence and, therefore, this reason given by the ALJ is not germane to her testimony. The ALJ
9 provides no other reason for discounting Ms. Livermont's testimony, and completely fails to
10 mention Ms. Livermont's statement that she recalled plaintiff had missed work four to six times a
11 month between 2006 and 2010 because of her headaches. [AR at 261.]

12    Nor can the ALJ's failure to provide reasons germane to this witness for discounting her
13 testimony be considered harmless error. The ME, Dr. Tanenhaus, testified at the hearing as
14 follows:

15    [ALJ]: . . . And, doctor, do you see a diagnosis of migraine headaches?

16    A: Yes, I do. That, to my recollection, forms more than the majority of the medical records.

17    [ALJ]: Okay. And do you have an opinion regarding that?

18    A: I think the relevant question would be how often would it cause her to miss work? I know that the headaches were listed as a contributing factor to her depressive disorder.

20    [ALJ]: Okay. All Right. Anything else, doctor?

21    A: No, your honor.

23 [AR at 51.] Plaintiff's counsel then followed up with the following question:

24    ATTY: . . . [W]ould it be medically reasonable that she would be missing three or four days o[f] work a month based on the objective record as a whole?

25    [ME]: I'm thinking how to answer that. The frequency of her headaches would be the prime determiner to answer that question. But the headaches rather than any psychological conditions, which I mentioned would limit her attendance at work.

28 [AR at 52.] Accordingly, Dr. Tanenhaus did not dispute that plaintiff has been diagnosed and

7

treated for migraines and, in fact, confirmed that plaintiff's headaches, and not her depression or anxiety, might affect her attendance at work. He further stated that he would need to review the "particular records" to determine how often plaintiff "would be expected to miss work." [Id.] Additionally, the VE testified that if an individual with plaintiff's RFC were to miss up to four days of work per month due to migraine headaches, that individual "would be precluded from all full-time competitive employment," and there would be no jobs for such a hypothetical worker. [AR at 58-59.] The ALJ gave Dr. Tanenhaus' opinion "substantial weight." [AR at 28, 49-53.] Thus, if Ms. Livermont's statement regarding plaintiff's absenteeism were credited as true, there would be no work available for plaintiff.

Because the ALJ failed to provide a legally sufficient reason for discounting Ms. Livermont's testimony, and the error was not harmless, remand is warranted on this issue.

**B.    CREDIBILITY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 30-32.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of her symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v.

Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. § 404.1529(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 26-30], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina, 674 F.3d at 1112); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

Here, in discounting plaintiff's credibility, the ALJ specifically found that plaintiff's testimony regarding her subjective complaints and alleged limitations was "not fully persuasive." [AR at 30.] In support, he noted that her activities of daily living, such as personal care, preparing simple food, reading, watching television, shopping, walking, driving a car, paying bills, counting change, handling a savings account, and using a checkbook/money order, "are inconsistent with her allegation of total disability." [AR at 27-28.] He also noted that the medical evidence of record, including the consultative examiner's report, and plaintiff's neurological testing by the consultative examiner that "showed no neurological deficits," does not substantiate plaintiff's allegations of disabling limitations. [AR at 28.] Finally, the ALJ noted that plaintiff's "verbal responses and overall demeanor [at the hearing] were not suggestive of a person who is experiencing disabling limitations . . . [as] she was able to enter and exit the hearing room without much difficulty, and to answer questions quite thoroughly and clearly, all despite her alleged disabling limitations." [AR

at 30.]

### 1. Objective Medical Evidence

With respect to the medical records relating to plaintiff's migraine headaches, the ALJ stated the following:

> The medical evidence of record also does not substantiate [plaintiff's] allegations of disabling limitations. [Plaintiff's] complaints regarding the frequency, severity and duration of her migraine headaches, vision problems, anxiety, and depression do not justify any further limitations than those based on the objective medical evidence and are generally consistent with the limitations found. The objective medical findings and the level of treatment are not suggestive of this level of severity.
>
> . . . .
>
> [Plaintiff] presents with a history of migraine headaches. On October 13, 2012, at the request of the Disability Determination Service, [plaintiff] underwent a consultative neurological evaluation with Fariba Vesali, M.D. She reported a history of migraine head[aches] since she was seven years old and currently complained of headaches which occurred on a daily basis. . . . [Plaintiff] had no focal neurological deficit. Dr. Vesali's diagnosis included a history of migraine headaches and opined [plaintiff] had no limitations other than a restriction from working around excessive noise due to a history of headaches. The undersigned gives substantial weight to this physical assessment, as it is well supported by the objective medical evidence.
>
> The records revealed the claimant was diagnosed as having migraine headaches and insomnia. She was also diagnosed with hyperopia, astigmatism. Exh. 3F, 4F, 8F, 12F, 15F, 20F, 21F. [Plaintiff's] June 2011 and November 2011 brain CT scan showed no evidence of intracranial hemorrhage, mass effect or midline shift, normal density throughout the cerebrum, grossly unremarkable posterior fossa, intact osseous structures and clear visualized paranasal sinuses.[4] Exh. 8F/16, 27.
>
> . . . .
>
> In any event, the medical evidence of record certainly does not document any continuous 12-month period during which [plaintiff] was unable to work on a regular and continuing basis.

[AR at 28-30 (citation omitted).]

Plaintiff contends that the record shows that she was "treated predominantly for frequent, severe migraines, lasting for days at a time and causing pain, vision impairment, nausea and

---

[4] The ALJ did not discuss the import of these CT scan findings or how they relate -- or do not relate -- to plaintiff's migraine headache symptoms.

10

diarrhea, [and] dizziness, [and] requiring significant and urgent medication with side effects of dizziness and drowsiness, and a day or two period of recovery." [JS at 4-5.]

Preliminarily, while a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's credibility (see Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

As noted by plaintiff, her frequent visits to her physicians between February 2007 and 2014 are well documented in the record. [JS at 5-8.] For instance, among other things, the record reflects the following:

 February 2007: plaintiff complained of having headaches four or five times a month, lasting two to three days [AR at 282];

 March 2008: plaintiff reported "almost daily headaches," "extreme stress," and that she "hardly sleeps" [AR at 281];

 August 2008: followup with doctor [AR at 280];

 June 2009: plaintiff reported that since January 2009 her headaches had increased to daily and they last through the day [AR at 279];

 July 2009: plaintiff reported still having headaches [AR at 278];

 August 2009: an MRI showed possible hyperintensity related to migraine vasculopathy, or demyelinating disease and vasculitis [AR at 279-84];

 March 2010: plaintiff sought treatment at Urgent Care for migraine and nausea she had been suffering over a four-day period [AR at 296];

 April 2010: plaintiff went to the emergency room complaining of a two-day migraine [AR at 406-09];

 May 2010: plaintiff reported her headaches were "out of control," and she had a headache for a week [AR at 277];

 May 14, 2010, to July 9, 2010: plaintiff granted leave from work due to her referral to specialists for chronic migraines [AR at 847-49];

 September 10, 2010: let go from work [AR at 207];

 October 2010: plaintiff went to the emergency complaining of a three-day migraine,

and was given morphine for her pain [AR at 382-85];

December 2010: plaintiff went to the emergency room complaining of a three-day migraine, accompanied by nausea and vomiting [AR at 373-77];

January 4, 2011: plaintiff received treatment for muscle contraction/tension headache [AR at 858 (submitted to Appeals Council);

January 13, 2011: plaintiff treated for migraine headache and referred to ENT [AR at 891 (submitted to Appeals Council)];

January 27, 2011: plaintiff went to urgent care complaining of a five-day migraine [AR at 370];

March 2011: plaintiff treated for recurrent migraine headache [AR at 857 (submitted to Appeals Council)];

May 2011: plaintiff received a doctor's excuse to be off work on May 10, 2011, and May 11, 2011 [AR at 884 (submitted to Appeals Council)];

April 2011: plaintiff went to urgent care complaining of a three-day migraine [AR at 365];

June 2011: plaintiff went to urgent care complaining of a three-day migraine [AR at 339-44];

September 2011: plaintiff went to urgent care complaining of a four-day migraine [AR at 329-36];

October 2011: plaintiff went to the emergency room at Palmdale Regional Center due to migraine [AR at 854-55 (submitted to Appeals Council)];

November 2011: plaintiff went to urgent care complaining of a two-day migraine [AR at 316-18];

December 2011: plaintiff went to emergency room at Palmdale Regional Center due to migraine [AR at 853 (submitted to Appeals Council)];

January 31, 2012: plaintiff treated for migraine [AR at 885 (submitted to Appeals Council)];

February 2012: plaintiff went to urgent care complaining of a three-day migraine and was given morphine to relieve her pain [AR at 308-12];

March 2012: plaintiff seen by ENT consultant and told when at home to keep her windows closed, control the temperature, and increase the humidity [AR at 885 (submitted to Appeals Council)];

April 2012: plaintiff completed a Headache Questionnaire for Kaiser and reported daily headaches lasting up to six hours [AR at 243-44];

May 2012: plaintiff visited Kaiser for her migraines and was instructed to make an appointment with neurology [AR at 881 (submitted to Appeals Council)];

June 2012: plaintiff received a doctor's excuse to be off work on June 6, 2012, due

to her migraines [AR at 882 (submitted to Appeals Council)];

August 2012: plaintiff visited Kaiser for her migraines [AR at 880 (submitted to Appeals Council)];

September 2012: plaintiff visited Kaiser for her migraines [AR at 879 (submitted to Appeals Council)];

October 2012: plaintiff reported to her Kaiser neurologist that she has daily migraine-type headaches, which the neurologist advised "could be analgesic rebound headache in addition to migraine headache from daily Excedrin intake for 10 years [AR at 512-17];

October 13, 2012: plaintiff treated for migraine headache and nausea [AR at 886 (submitted to Appeals Council)];

October 16, 2012: plaintiff treated for migraine with aura, and insomnia [AR at 888 (submitted to Appeals Council)];

November 2012: plaintiff reported to her eye doctor that she gets extreme migraines, her eyes feel strained and she experiences blurry vision, at night she is sensitive to glare and light [AR at 736-38];

November 2012: plaintiff visited Kaiser for her migraines [AR at 878 (submitted to Appeals Council)];

January 2013: plaintiff refilled her migraine headache medication and reported she did not have a headache at that time [AR at 768];

February 2013: plaintiff sought treatment for her migraines, stating they were "out of control" [AR at 779];

May 2013: plaintiff sought treatment for a five-day migraine, accompanied by nausea and diarrhea [AR at 789-90];

June 2013: plaintiff sought treatment for a migraine she described as 10 on a ten-point scale [AR at 793];

July 3, 2013: plaintiff sought treatment for migraine, neck pain and spasms [AR at 803];

July 29, 2013: plaintiff went to urgent care for 3-day migraine and neck pain described as 10/10, with nausea [AR at 811-12];

August 2013: plaintiff agreed to a trial of Botox injections, and was advised to limit her 100 mg Imitrex to 9 tablets per month, and to take Excedrin as needed, but not daily [AR at 817];

December 2013: plaintiff visited the emergency room complaining of daily migraines [AR at 877 (submitted to Appeals Council)];

July 2014: plaintiff treated for intractable migraine, without aura [AR at 889 (submitted to Appeals Council)];

September 2014: plaintiff treated for headache [AR at 890 (submitted to Appeals

1 Council)].

2 In sum, there is no shortage of records reflecting plaintiff's regular complaints of and treatment for her migraine headaches, many of which reportedly lingered for several days, and many of which were accompanied by other symptoms.

In contrast, Dr. Vesali, the consulting examiner, saw plaintiff once, on October 13, 2012. [AR at 506-09.] Plaintiff reported to Dr. Vesali that she had headaches since she was seven years old, and that they had been occurring daily "for a long time." [AR at 506.] Although plaintiff had just been to the urgent care where she received a shot of Toradol, her pain was still a 7 on a ten-point scale. [Id.] Dr. Vesali noted that plaintiff did "not have any pain expression." Plaintiff reported that the nine Imitrex her physician gives her a month are not enough for her. [Id.] Dr. Vesali diagnosed plaintiff with a "[h]istory of migraine headaches," but stated -- without explanation -- that plaintiff's only limitation due to the headaches would be "to working around excessive noise." [AR at 509.] Dr. Vesali stated that she reviewed the "record that was provided by DDS" but did not provide further explanation as to the records reviewed. [AR at 506.] Her examination appears to have consisted of observation of plaintiff's coordination/station/gait; range of motion of her spine, and joints (hip, knee, ankle, shoulder, elbow, wrist, finger/thumb); seated and supine straight leg raising tests; tests of motor strength/muscle bulk; sensory touch and pinprick tests; deep tendon reflexes; and cranial nerve observation. [AR at 507-08.] Notwithstanding the more than eight years of records documenting plaintiff's regular complaints of and treatment for her migraine headaches, the ALJ noted that no treating or examining source in the record precluded plaintiff from the performance of all work activity [AR at 28], and gave Dr. Vesali's opinion "substantial weight" as being "well supported by the objective medical evidence." [AR at 28-29.]

Even assuming -- without deciding -- that this reason as given by the ALJ was specific, clear and convincing,[5] it cannot by itself be the sole legally sufficient reason for discounting

---

[5] The record reflects that plaintiff's treating physicians did not question her subjective complaints of migraine headaches and, indeed, it appears they took plaintiff's subjective complaints of migraine pain quite seriously, e.g., by sending her to specialists, ordering diagnostic and clinical tests, and prescribing and adjusting her medication, among other things. See
(continued...)

14

plaintiff's credibility. Thus, the ALJ's credibility determination rises or falls with the ALJ's other ground for discrediting plaintiff.

### 2. Activities of Daily Living

An ALJ may discredit testimony when plaintiff reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)); see also Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter, 806 F.3d at 493-94 (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

Here, the ALJ fails to show *how* plaintiff's daily activities such as personal care, preparing simple food, reading, watching television, shopping, walking, driving a car, paying bills, counting change, handling a savings account, and using a checkbook/money order, "are inconsistent with her allegation of disabling migraine headaches that would prevent her from completing an eight-hour workday." [AR at 28-29.] Additionally, the record shows that although plaintiff testified she could do some of these activities, she also provided testimony that these activities are limited and she requires help with many of them. [AR at 235-42.] For instance, she stated that she has a driver's license but does not drive because of her headaches, and a cab takes her son to school. [Id.] She also stated that when she feels well she showers, eats, and cleans up; she prepares

---

[5](...continued)
Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (noting that "[s]heer disbelief is no substitute for substantial evidence," and finding that ALJ erred by requiring objective evidence of plaintiff's fibromyalgia where plaintiff reported severe fibromyalgia symptoms both before and after diagnosis, and much of her medical record substantially pre-dated her disability application).

simple foods such as sandwiches, hot dogs, and frozen dinners depending on "how bad" she feels; she does cleaning and laundry once a week; she goes outside a few times a week but does not go alone when she does not feel well because she gets dizzy and tends to lose her balance; and she shops for food, clothing, and cleaning supplies every other week. [AR at 235-40.] Similarly, her daughter stated that she helps plaintiff take care of plaintiff's son when plaintiff does not feel well; plaintiff prepares only simple meals when she feels well which is "not very often"; plaintiff cleans and does laundry for a few hours "when she feels good"; plaintiff does not "go out that often because she is sick a lot"; when plaintiff does not feel good she is bed-ridden and light bothers her eyes, she does not walk around, and does not take part in social activities because she is hardly able to go anywhere; and "she is sick all the time." [AR at 215-21.] The sorts of limited activities described by plaintiff and her daughter do not suggest that plaintiff was being disingenuous when she testified that her migraines, anxiety, and depression, prevent her from working, as the amount of involvement plaintiff described in these daily activities was minimal. See, e.g., Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Nor do these daily activities provide support for the ALJ's conclusory statement that plaintiff's daily activities -- as *actually* described by plaintiff and her daughter -- demonstrate that plaintiff engages in a "*wide range* of activities of daily living." [AR at 28 (emphasis added).] Nor did the ALJ show that these activities are transferrable to a work setting. See Molina, 67 F.3d at 1113 (ALJ may discredit testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting). Thus, these stated reasons do not provide substantial grounds for contradicting plaintiff's claims of debilitating impairments. See id.

Based on the foregoing, this reason was not a specific, clear and convincing reason to discount plaintiff's testimony.

**3. Personal Observation**

The ALJ's personal observation that plaintiff was able to enter and exit the hearing room without much difficulty, and to answer questions quite thoroughly and clearly, does not in any way provide a specific, clear and convincing basis for discounting plaintiff's allegations of pain. Indeed, this justification for discounting a claimant's testimony has been rejected by the Ninth Circuit. See Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (noting the Ninth Circuit has disapproved of "sit and squirm" jurisprudence that relies on the claimant's failure to manifest symptoms during the hearing) (citation omitted).

However, the "inclusion of the ALJ's personal observations does not render the decision improper." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (citations omitted). "Where . . . the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." Id. (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Moreover, although they may not form the *sole* basis for discrediting a claimant's subjective symptom testimony, an ALJ may properly consider his own observations at the hearing as part of the credibility analysis. Orn v. Astrue, 495 F.3d 625, 639-40 (ALJ's personal observations may be used in "the overall evaluation of the credibility of the individual's statements"); Nyman v. Heckler, 779 F.2d 528, 531 n.1 (9th Cir. 1985) ("The ALJ's observation of [the claimant]'s demeanor was relevant to his credibility and was not offered or taken as a substitute for medical diagnosis.").

In this case, however, the ALJ's personal observation comes nowhere near to being a legally sufficient reason in itself to reject plaintiff's pain testimony. The fact that plaintiff could enter and exit the room "without much difficulty," and the fact that she could coherently answer the questions put to her, does not in any way provide a specific, clear or convincing basis for discounting plaintiff's allegations of disabling migraine headaches or other subjective complaints.

### 4. Conclusion

Because the objective evidence by itself cannot be the only reason for discounting a claimant's testimony, the ALJ on remand must reconsider plaintiff's RFC in light of the record

evidence, and must also provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony, if warranted. See Treichler, 775 F.3d at 1103; Brown-Hunter, 806 F.3d at 493-94.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke, 379 F.3d at 595-96. Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide reasons germane to the witness for discounting Ms. Livermont's lay witness testimony, the ALJ on remand shall reassess that testimony. Second, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting her testimony. Third, the ALJ shall also reassess the medical opinion evidence and explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Finally, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the

assistance of a VE if necessary,[6] whether plaintiff is capable of performing her past relevant work as a sales attendant.[7] If plaintiff is not so capable, then the ALJ should proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 30, 2016

/s/ - Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6] In her third issue, plaintiff argues that the ALJ's failure to properly consider plaintiff's symptoms and restrictions, as presented through plaintiff's testimony and the records of her treating doctor, as well as by the evidence supporting her frequent absences from work due to her migraines, resulted in a hypothetical to the VE that failed to properly set forth all of plaintiff's impairments. [JS at 40.] Because the matter is being remanded for reconsideration of the medical records, as well as reconsideration of the testimony of plaintiff and a lay witness, and the ALJ on remand will also reconsider plaintiff's RFC, the Court will not address the third issue herein.

[7] Nothing herein is intended to disrupt the ALJ's implicit step four finding that plaintiff is unable to return to her past relevant work as a small parts assembler. [See AR at 30, 57-58.]